## THE FALL RIVER UNION BANK *vs.* ARTEMAS WILLARD.

Where one indorsed a bill of exchange, for the accommodation of the drawer, who negotiated it on an agreement, not assented to nor known by the indorser, that it should not be presented to the drawee for acceptance, until maturity, and it was accordingly first presented to the drawee at maturity, and then dishonored; it was held that the indorser was not thereby discharged.

Where the holder of an indorsed bill of exchange, which is not accepted by the drawee, merely informs the drawee that he (the holder) has the bill, but does not actually present it to him for acceptance, and the drawee thereupon tells him that the bill will not be accepted nor paid, the indorser is not thereby discharged though no notice is given to him of the drawee's declarations.  ·

THIS was an action, brought by a bank incorporated by the legislature of Rhode Island, and doing business at Tiverton,

near Fall River, against the indorser of a bill of exchange. The bill was drawn by an unincorporated company, called the Tiverton Print Works, by their agent, William Canedy, on Ruggles & Chace at Fall River, dated July 27th 1839, for $ 1050 payable in six months. Trial before *Shaw*, C. J. who reported the case, as follows :

There was evidence tending to show that Ruggles & Chace constituted a firm, and had a house of trade at St. Louis, Missouri ; that they had dealings with the drawers of the bill ; that Chace, one of the firm, was at Fall River in the summer of 1839, though not in that town on the day the bill was drawn ; that he was at Fall River in January 1840, when the bill fell due, and, for aught that appeared, had remained in this part of the country in the mean time.

There was evidence tending to show that at the time of the date of the bill, the Tiverton Print Works (the drawers) and Ruggles & Chace had an open and unsettled account, on which there was supposed to be due to the drawers about $ 1000 ; that a few days after, another bill was drawn by the said Print Works Company on Ruggles & Chace, upon a settlement, for the sum of $ 912, which was accepted by them and paid at maturity.

It further appeared, that the day before the date of the bill in suit, said Canedy, the agent of the drawers, applied to the plaintiffs for a discount of a bill on Ruggles & Chace for $ 1000, at six months, which the plaintiffs declined taking, because it had too long a time to run ; that Canedy then proposed to obtain a like discount on a draft of said Print Works Company upon Harrison & Co. of Baltimore, at four months, payable to the order of the drawers and indorsed by them, which the plaintiffs agreed to take. But the Print Works Company had not then received from Harrison & Co. an acceptance of such draft, and as Canedy was in urgent want of the money on that day, to pay off the workmen of the company, he proposed, for the purpose of obtaining it in advance of an accepted draft from Baltimore, to secure the $ 1000 by pledging the draft on Ruggles & Chace for $ 1050, now in suit ; but as Chace was out

of town, Canedy further proposed to procure an indorser on that draft, and offered the name of the defendant. This was acceded to by the plaintiffs, and the draft was indorsed by the defendant and deposited by Canedy with the plaintiffs, who advanced to him $1000, upon an agreement that the draft, accepted by Harrison & Co. was to be obtained as soon as practicable, and deposited with the plaintiffs, and that when that was done, the present bill was to be given up. At the same time, it was agreed by Canedy and the plaintiffs, that the present draft was not to be presented for acceptance ; but the precise terms of that agreement, the length of time the draft was to remain without being presented for acceptance — whether until the bill was at maturity, or otherwise, and whether this was known and assented to by the defendant — were questions submitted to the jury. There was evidence to show that the defendant knew that the bill was to be negotiated and deposited with the plaintiffs as a temporary security till the return of the accepted draft.

There was evidence tending to prove that the accepted draft from Baltimore was never received by the plaintiffs ; that about a month after the time of this negotiation, the Tiverton Print Works failed, and have ever since been wholly insolvent ; that the plaintiffs made no formal presentment of the bill to Ruggles & Chace for acceptance, until its maturity, on the 30th of January 1840, when it was presented for acceptance and payment, at the same time, by a notary public ; that the drawees refused both to accept and to pay it, for want of funds ; and that seasonable notice thereof was given to the defendant.

There was evidence from the deposition of Cromwell Chace, one of the drawees, tending to show that after a sufficient time had elapsed to receive an accepted draft from Baltimore, the plaintiffs' cashier met him (Chace) and applied to him to know how the account stood between Ruggles & Chace and the Print Works, and that the cashier then informed Chace that the plaintiffs had the draft on them, now in suit, and that he informed the cashier that it would not be accepted. The cashier testified that he had no recollection of what Chace deposed, and that it

was not intended to present the bill for acceptance until its maturity.

The jury were instructed, that if the bill was discounted by the plaintiffs at the request of Canedy, as agent for the Tiverton Print Works and was indorsed by the defendant, for the accommodation of the drawers; and if at the time of the negotiation to the plaintiffs, it was agreed between Canedy and them that the bill should not be presented to the drawees for acceptance, then, unless such agreement was made with the knowledge and assent of the defendant, it would discharge him, because it would alter and extend his responsibility.

The jury were also instructed, that if . the bill was indorsed by the defendant for the accommodation of the drawers, by the request of Canedy, their agent, and deposited with the plaintiffs as temporary collateral security for the draft on Harrison & Co., to be accepted by them and returned, and until such acceptance could be procured by Canedy, after a sufficient and ample time had elapsed to obtain such acceptance, in the usual course of business, it did not come ; then it was the duty of the plaintiffs to present the bill, now in suit, to the drawees for acceptance, and if acceptance were refused, to give reasonable notice thereof to the defendant ; and that if they failed so to do, it was a default and want of due diligence on the part of the plaintiffs, which discharged the defendant, unless he had consented that the bill should not be presented for acceptance, until its maturity.

In reference to the testimony of Chace and the plaintiffs' cashier, the jury were instructed, that if the bill was presented for acceptance before its maturity, or if the drawees were informed by the cashier that the plaintiffs had such a draft on them, and they thereupon informed the cashier that they should not accept nor pay it, and if no notice thereof was given to the indorser, (the defendant,) he was discharged.

The jury found a verdict for the defendant, which was to be set aside, and a new trial to be granted, if the foregoing instructions, or either of them, were wrong.

*Eliot*, for the plaintiffs.

*Coffin*, for the defendant.

HUBBARD, J.   It is a well established principle of the law regulating bills of exchange, that the holder of a bill, payable at a certain time after date, need not present it for acceptance prior to the day of payment.   And though it is usual and safe so to do, as he thereby strengthens his security, or, in case of non-acceptance, acquires an immediate right to call on the other parties to the bill, yet he is under no legal obligation to do it, nor can the omission be taken advantage of by the drawer or indorsers.   *Goodall* v. *Dolley*, 1 T. R. 712.   Chit. on Bills, Part I. *c.* 5.   3 Kent Com. (4th ed.) 82.   *O'Keefe* v. *Dunn*, 6 Taunt. 305.   *S. C.* 1 Marsh. 613.

The question in this case, as to the first instruction, is, whether the circumstances, under which the plaintiffs took the bill, imposed a duty on them not required in common cases.   The facts alleged, upon which the instruction is founded, are these : The bill was drawn by the agent of the Tiverton Print Works on Ruggles & Chace, and indorsed by the defendant for the accommodation of the Print Works ; and the same was discounted by the plaintiffs with the understanding on their part, that the drawer might substitute the acceptance of Harrison & Co. of Baltimore for the sum advanced, when such acceptance should be received.   And at the same time, it was agreed that the draft was not to be presented for acceptance.   The instruction was, that if such agreement, not to present the draft for acceptance, was made without the knowledge and assent of the indorser, it would discharge him, because it would alter and extend his responsibility.

The jury, by their verdict, it may be presumed, negatived any such knowledge on the part of the defendant.   It is not to be understood by this instruction, that the draft was not to be presented, at any time, to the drawees for their acceptance — that is, waiving any demand upon them ; but that no presentment should be made prior to the time of the maturity of the bill.   The holding of this bill as a substitute for another, as value was paid for this, has no effect upon the plaintiffs' right.   *Bachellor* v. *Priest*, 12 Pick. 399.   And it is very clear that if no such agreement, in respect to keeping back the bill, had

been made, the mere fact of the non-presentment of the bill, before the day of payment, would not avail the defendant as a defence against his liability.   Shall then the agreeing not to present it vitiate the claim of the plaintiffs ?   It may here be stated, that the law, as regards accommodation drawers and indorsers, and *bonâ fide* holders, is the same as between drawers and indorsers for value, and *bonâ fide* holders ; although the holder knows that the bill is an accommodation bill.   *Fentum* v. *Pocock,* 5 Taunt. 192.   [Story on Bills, § 191.]   If it were not so, the end for which such bills are made would be defeated ; the object being to give them the same character as to value, credit and negotiability, as a bill drawn in the ordinary transactions of business.

It may be argued in a case like the present, that by such an agreement not to present the bill for acceptance, the defendant may have been injured ; as the drawees might have accepted the bill, if early presented ; or if acceptance was refused and notice of the same was duly given to the indorser, he might have paid the bill and taken measures to secure himself against the drawer.   This is true.   The same objection, however, might be made, with equal force, in a case where no such agreement existed, and where the holder made no demand upon the drawee till the day of payment.   But in such case, there being no duty existing on the part of the holder to present, the defendant would be without redress.   So here, we think the agreement of the plaintiffs not to do what in law they were under no obligation to do, cannot affect the rights of the plaintiffs against the defendant ; and though a loss may have been sustained by the defendant, by reason of the non-presentment before the day of payment, yet it is *damnum absque injuriâ.*   It would be introducing a new distinction in the law of bills of exchange in respect to *bonâ fide* holders of accommodation bills, in giving accommodation drawers and indorsers the character of sureties ; which might work much practical inconvenience.   If the accommodation indorser chooses to impose a condition upon his indorsement, which shall affect future *bonâ fide* holders of the bill, he may do it at the time of making his indorsement, and in

19 *

such manner, that the *bonâ fide* holder shall be apprized of it and be bound by it. And if not, then he stands in the same situation as to the *bonâ fide* holder, as any other indorser, with the same rights, and subject to the same liabilities. The agreement, in the present case, was one of mere convenience as between the drawer and holder, not affecting the rights of third parties; and the legal responsibility of the indorser, therefore, not being altered or extended by the agreement, we are of opinion that the instruction in this respect was erroneous.

The second instruction, coming directly within the reasoning which applies to the first, it is not necessary to state the facts which gave occasion to it.

In regard to the third instruction, it is very clear that if the bill was presented for acceptance, and the same was refused, it was the duty of the holder to give due notice to those parties whom he intended to charge. But the question here is, whether the facts stated constitute such a presentment of the bill as to discharge the defendant for want of notice.

The evidence which was introduced tended to show that the cashier of the Fall River Union Bank (the plaintiffs in this suit) met Chace, one of the house upon which the bill was drawn, and informed him that the bank had the draft, (now in suit,) upon which Chace told the cashier that they should not accept or pay it. And the instruction to the jury was, that if no notice thereof was given to the indorser, he was discharged. Waiving the question whether the cashier was agent for the plaintiffs for the purpose of presenting the draft for acceptance, or not, we are of opinion that this was not a due presentment of the bill for acceptance. The term presentment imports, not a mere notice of the existence of a draft which the party has in his possession, but the exhibiting of it to the person on whom it is drawn; that he may see the same, and examine his accounts or correspondence, and judge what he shall do; whether he shall accept the draft, or not. Here there appears to have been nothing more than a casual meeting of the parties, and the conversation on the subject of the draft ensued. If this had been communicated, it would have created no obligation on the part of the indorser

to make present payment, and consequently such conversation imposed no present duty on the holders, as to the other parties to the bill. With this view of the case we are not satisfied with the instruction given to the jury. To confirm it, would tend to introduce a looseness of practice on the subject of presenting bills for acceptance, which will lead to disputes and difficulties greater than now exist.

*Verdict set aside, and a new trial granted.*